**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                 :
RICHARD A. MYERS,                :
                                 :     CIVIL ACTION NO. 04-6362 (MLC)
     Plaintiff,                  :
                                 :     MEMORANDUM OPINION
     v.                          :
                                 :
COUNTY OF SOMERSET, et al.       :
                                 :
     Defendants.                 :
_____:
```

**COOPER, District Judge**

Plaintiff, Richard A. Myers ("Myers"), commenced this action against the County of Somerset ("County"), Wayne J. Forrest ("Forrest"), Ronald E. Thornberg ("Thornberg"), Norman Cullen ("Cullen"), Nicholas Magos ("Magos"), Andrew Hissim ("Hissim"), Daniel Livak, and Stephen Burke (collectively, the "Defendants") alleging, inter alia, that Defendants (1) retaliated against him for exercising his First Amendment rights in violation of 42 U.S.C. § 1983 ("Section 1983") and the First, Fifth, and Fourteenth Amendments, (2) conspired to deprive him of his rights under the First, Fourth, Fifth, and Fourteenth Amendments "by conspiring to harass and retaliate against [him] for [his] exercise of protected First Amendment rights of speech and association", (3) approved and ratified the unlawful, deliberate, malicious, reckless and wanton conduct of their officers by authorizing and adopting certain customs, policies, practices,

and usages, and (4) violated New Jersey's Conscientious Employee
Protection Act, N.J.S.A. § 34:19-3.  (Compl.)  Defendants move
for summary judgment pursuant to Federal Rule of Civil Procedure
("Rule") 56.  (Dkt. entry no. 21.)  Myers opposes the motion.
(Dkt. entry no. 22.)  The Court, for the reasons stated herein,
will (1) grant the part of the motion seeking summary judgment as
to the federal claims, (2) enter judgment in favor of the
defendants and against the plaintiffs on the federal claims, and
(3) dismiss the state claims without prejudice to reinstate in
state court.

## BACKGROUND

The Somerset County Prosecutor's Office ("Prosecutor's
Office") hired Myers as an investigator on January 2, 1986.
(Defs. Stmt. of Undisp. Mat. Facts, at ¶ 12; Pl. Opp. to Defs.
Stmt. of Undisp. Facts, at ¶ 12.)  He was promoted to detective
on September 1, 1987, and then to detective-sergeant on January
1, 1988.  (Defs. Stmt. of Undisp. Mat. Facts, at ¶ 14; Pl. Opp.
to Defs. Stmt. of Undisp. Facts, at ¶ 14.)  Myers was laid off
from the Prosecutor's Office on February 20, 1995.  (Defs. Stmt.
of Undisp. Mat. Facts, at ¶ 15; Pl. Opp. to Defs. Stmt. of
Undisp. Facts, at ¶ 15.)  He challenged the lay off by filing an
Unfair Practice Charge.  (Defs. Stmt. of Undisp. Mat. Facts, at ¶
15; Pl. Opp. to Defs. Stmt. of Undisp. Facts, at ¶ 15.)  He was
rehired on February 19, 1997 with a one-year probationary period

pursuant to an agreement between PBA Local 307 and the
Prosecutor's Office.  (Defs. Stmt. of Undisp. Mat. Facts, at ¶
16; Pl. Opp. to Defs. Stmt. of Undisp. Facts, at ¶ 16.)  The
Prosecutor's Office later terminated Myers on September 20, 2004.
(Id. at ¶ 17; Compl., at ¶¶ 84-85.)  Although the parties agree
that Myers was an at-will employee, Myers asserts that his
termination violated his statutory and constitutional rights.
(See Defs. Stmt. of Undisp. Mat. Facts, at ¶ 17; Pl. Opp. to
Defs. Stmt. of Undisp. Facts, at ¶ 2, 17.)

**DISCUSSION**

## I.    Summary Judgment Standard

Rule 56(c) provides that summary judgment is proper "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears
the initial burden of showing that there is no genuine issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  Once the movant has met this prima facie burden, the
non-movant "must set forth specific facts showing that there is a
genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must
present actual evidence that raises a genuine issue of material

fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

4

## II.   Summary Judgment Standard Applied Here

### A.   Myers's Section 1983 Claims

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  For a Section 1983 claim to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.

"The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  Further, officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility.  However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement in the alleged wrong-doing must be shown.  Id.  Defendants here, Somerset County and several employees of the Prosecutor's Office, were acting under the color of state law at all times relevant to the complaint.

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  See Groman, 47 F.3d at 633.  As discussed in more detail below, this Court finds that (1) Defendants have shown that no genuine issues of material fact exist with respect to Myers's Section 1983 claims, and (2) Myers has not demonstrated that Defendants violated any of his constitutional rights.  Thus, Defendants cannot be held liable under Section 1983.  See Martino v. County of Camden, No. 04-5300, 2005 U.S. Dist. LEXIS 15622, at *41 (D.N.J. July 26, 2005) (explaining that because no established constitutional right was violated, defendants could not be held liable under Section 1983).

### 1.    First Amendment

The First Amendment protects a public employee's right to speak as a citizen on matters of public concern under certain circumstances.  Garcetti v. Ceballos, 126 S.Ct. 1951, 1957 (2006).  However, "[a] government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."  Id. at 1958. Accordingly, while the First Amendment prevents public employers from restricting the liberties enjoyed by their employees as private citizens, it does not empower such employees to "constitutionalize the employee grievance."  Id. at 1958-59.

6

Section 1983 provides for a cause of action when a state actor retaliates against an individual for participating or engaging in conduct protected by the First Amendment.  See Bradshaw v. Twp. of Middletown, 145 Fed.Appx. 763, 766-67 (3d Cir. 2005).  To state a First Amendment retaliation claim, the plaintiff must allege that (1) the plaintiff's conduct was protected by the First Amendment because it addressed a matter of public concern, (2) the plaintiff was retaliated against, and (3) the retaliation was a substantial or motivating factor in the alleged retaliation.  Id. at 767; see Ober v. Brown, 105 Fed.Appx. 345, 346-47 (3d Cir. 2004) (explaining that to prevail on a First Amendment retaliation claim the plaintiff must establish that (1) he or she engaged in protected activity, (2) the defendants retaliated in response to the activity, and (3) the defendants could not rebut the claim by showing that they would have taken the same action in the absence of the protected speech).  The employer can rebut the plaintiff's claim by demonstrating that it would have made the same decision absent the protected conduct. Bradshaw, 145 Fed.Appx. At 767.  A plaintiff's conduct is protected by the First Amendment when it is about a matter of public concern and the employer does not have a justification for treating the employee differently than other members of the general public.  Muzslay v. City of Ocean City, Nos. 05-1335 & 05-1429, 2007 U.S. App. LEXIS 7311, at *7 (3d Cir. Mar. 29, 2007); see Fogarty v. Boles, 121 F.3d 866, 888 (3d Cir. 1997).

7

The Court determines as a matter of law if an activity constitutes protected speech.  However, whether the retaliatory action of the defendant "reached the threshold of actionability under § 1983" is a factual question for the trier of fact. Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000).  "An employment action is considered adverse, for the purposes of determining unlawful retaliation, if it is likely to chill a person of ordinary firmness in the exercise of their First Amendment rights."  Bradshaw v. Twp. of Middletown, 296 F.Supp.2d 526, 538 (D.N.J. 2003) (internal quotes and cites omitted).

Speech pertains to a matter of public concern if the speech "can be fairly considered as relating to any matter of political, social or other concern to the community."  Costello v. City of Brigantine, No. 99-4072, 2001 U.S. Dist. LEXIS 8687, at *63 (D.N.J. June 28, 2001); see Muzslay, 2007 U.S. App. LEXIS 7311, at *7.  Thus, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 126 S.Ct. at 1960.  Further, there can be no cognizable First Amendment claim under Section 1983 in the absence of speech.  Fogarty, 121 F.3d at 890-91 (concluding that the absence of speech was fatal to the plaintiff's claim).  This is true even if the employer discharges the employee based on substantively

8

incorrect information about whether protected statements were made.  See id. at 890.

An action brought pursuant to Section 1983 is subject to the statute of limitations for personal injury actions in the state in which the claim arises.  O'Connor v. City of Newark, 440 F.3d 125, 126 (3d Cir. 2006).  In New Jersey, the relevant statute of limitations is two years from the date that the cause of action accrued.  See N.J.S.A. § 2A:14-2.  "First Amendment retaliation claims are always individually actionable, even when relatively minor."  O'Connor, 440 F.3d at 127-28.  The statute of limitations, therefore, begins to run when an alleged retaliatory act occurs.  Id. at 128 (noting that causes of action that can be brought individually expire with the applicable limitations period).  "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Id. at 127.[1]

---

[1] First Amendment retaliation claims are not subject to the "continuing violations" exception to the statute of limitations that is applicable to hostile work environment claims.  A retaliatory act that infringes upon a plaintiff's First Amendment rights is a discrete act.  O'Connor, 440 F.3d at 127; see Cindrich v. Fisher, No. 05-1348, 2006 U.S. Dist. LEXIS 18937, at *9 (W.D. Pa. April 10, 2006) (stating that because the Third Circuit held that acts of retaliation are discrete acts, the plaintiff's retaliation claims were time barred).  A hostile work environment claim, however, is based on multiple acts that alone are not individually actionable, but cumulatively provide the plaintiff with a cause of action.  O'Connor, 440 F.3d at 128.

The complaint in this action was filed on December 27, 2004. (Compl.)  Therefore, any alleged retaliatory actions committed by the Defendants before December 27, 2002, are not actionable for purposes of Myers's Section 1983 claims.  See O'Connor, 440 F.3d at 127.  Accordingly, Myers' allegations that Defendants retaliated against him by promoting the following persons over him are time-barred: (1) Magos to lieutenant in December 2001, (2) Hissim and Peter Lubas to lieutenant on December 20, 2002, and (3) Lisa Abbate, Brian Hoey, and Robert Bryant to sergeant on December 20, 2002.  (See Compl., at ¶¶ 18-19; Defs. Br., at 7.) Evidence of these time-barred acts, however, may be considered to "more intelligently evaluate the evidence that does create liability."  Hurley v. Atl. City Police Dep't, 174 F.3d 95, 109 (3d Cir. 1999) (determining that it was not an abuse of discretion for the district court to admit and allow the jury to consider evidence that provided relevant background for the plaintiff's claim, but could not form the basis of the defendant's liability).

With respect to Myers's remaining First Amendment allegations, the Court finds that Myers has not shown that he engaged in any conduct protected by the First Amendment.  See Ober, 105 Fed.Appx. at 346-47 (explaining that to prevail on a First Amendment retaliation claim the plaintiff must establish, inter alia, that he or she engaged in protected activity).  Myers

10

argues that Defendants "engaged in a pattern of retaliatory harassment in violation of his First Amendment rights."  (Pl. Br., at 4.)  Specifically, Myers contends that Defendants initiated his termination investigation to harass him because, inter alia, (1) he complained to Forrest, the County Prosecutor, that someone was promoted over him, (2) he "brought up concerns of threatening and intimidating patterns against him", which were not addressed, (3) he questioned whether anyone else was being attacked with respect to the Prosecutor's Office's rules, (4) Cullen falsely accused him of stating that "Narcotics could run better and that the wrong people were in there", (4) Forrest stated that Myers discussed Forrest's reappointment with the Raritan Police Chief, (5) he told Forrest and Chief Rasmussen that he believed the County chiefs were hypocrites for supporting Forrest for reappointment, (6) Forrest believed Myers spoke to the media, (7) he complained to Thornberg, Forrest, and others about Cullen's erratic martial arts behavior and derogatory statements toward Myers, and (8) he requested but did not receive written documentation explaining how he "jumped the chain [o]f command" after he was reprimanded for doing so.  (Id. at 6-8.)

Several of these allegations surround statements made or actions performed by persons other than Myers.  (See Pl. Br., at 6-8.)  Further, Myers disclaims (1) ever speaking to anyone in the media regarding the Prosecutor's Office, (2) ever speaking to anyone other than Forrest and Chief Rasmussen about Forrest's

renomination to Prosecutor, and (3) stating that the "Narcotics could run better" to Cullen.  (Id., Ex. 1, Myers Dep. Tr., at 124, 264, 265.).  Thus, Myers has no cognizable First Amendment claim with respect to those statements he did not actually make regardless of whether any of the Defendants erroneously believed he made such statements.  See Fogarty, 121 F.3d at 890-91 (concluding that the absence of speech was fatal to the plaintiff's claim).

The majority of Myers's remaining statements do not address matters of public concern.  Specifically, Myers's promotion complaints, statements about the "threatening and intimidating patterns against him", questions about whether he was being "attacked" with the Prosecutor's Office's rules, complaints about Cullen, and request for written documentation about how he "jumped the chain of command" pertained solely to Myers's own employment situation, and therefore, are not matters of public concern.  (See Pl. Br., at 6-7.)  See Muzslay, 2007 U.S. App. LEXIS 7311, at *8 (agreeing with the district court that the plaintiff's objections regarding the abrogation of his authority involved only his personal employment situation, and thus, were not protected by the First Amendment).  Moreover, any statements Myers made about specific criminal investigations, including the "Sass homicide", would also not be protected because they were made pursuant to Myers's official duties.  (See Pl. Br., at 8.)

See Garcetti, 126 S.Ct. at 1960 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes. . . ."). Therefore, the majority of statements underlying Myers's First Amendment retaliation claims cannot be "fairly considered as relating to any matter of political, social or other concern to the community."  Costello, 2001 U.S. Dist. LEXIS 8687, at *63.

Myers's only statements that could be construed as pertaining to a matter of public concern are his statements to Forrest and police Chief Rasmussen about the police chiefs within the county being hypocrites for supporting Forrest for renomination as Prosecutor.  (See Pl. Br., at 6.)  Nevertheless, these statements undermine the authority of the Prosecutor and encourage a breakdown of the working relationship between the county chiefs and the current county Prosecutor.  Thus, Myers's interest in making these statements is outweighed by the Prosecutor's Office's interest in disregarding comments that might interfere with it effectively fulfilling its responsibilities to the public.  See Fogarty, 121 F.3d at 888 (noting that the First Amendment protects public employees from retaliation if, inter alia, they speak on a matter of public concern and "their interest in that field outweighs the government's concern with the effective and efficient fulfillment of its responsibilities to the public").  Also, Defendants assert

13

that Myers was terminated because "the Prosecutor lost complete confidence in [his] ability to carry out his oath of allegiance and 'faithfully, justly and impartially execute his duties.'" (Id.)  Defendants describe in detail numerous incidents, which caused them to lose confidence in Myers's abilities.  (See Defs. Stmt. of Undisp. Mat. Facts.)

Myers, in contrast, offers no evidence, circumstantial or otherwise, that indicates that either his promotion complaints, reassignments, or ultimate termination would not have occurred but for his statements about the county chiefs being hypocrites for supporting Forrest.  See Fogarty, 121 F.3d at 888 (noting that the First Amendment protects public employees from retaliation if, inter alia, their protected speech caused retaliation and "the adverse employment decision would not have occurred but for the speech").  In fact, Myers was not terminated until nearly eighteen months after he made these statements to Forrest and Chief Rasmussen.  (Defs. Br., at 15.)  Therefore, Myers has not rebutted Defendants' prima facie showing that none of the alleged adverse actions taken against him were substantially motivated by his statements to Forrest and Chief Rasmussen.  See Bradshaw, 145 Fed.Appx. at 763.  Accordingly, summary judgment is appropriate on Myers's First Amendment retaliation claims.

## 2.   **Fifth Amendment**

The Fifth Amendment provides, <u>inter alia</u>, that no person "shall be deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  However, "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action. . . ."  <u>Nguyen v. U.S. Cath. Conf.</u>, 719 F.2d 52, 54 (3d Cir. 1983).  Accordingly, the rights provided by the Fifth Amendment do not apply to the actions of state officials. <u>Leventry v. Watts</u>, No. 06-193, 2007 U.S. Dist. LEXIS 36256, at *7 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors."); <u>Kopchinski v. Green</u>, No. 05-6695, 2006 U.S. Dist. LEXIS 53790, at *2-*3 (E.D. Pa. Aug. 2, 2006) (finding that because defendants were state actors, plaintiff's Fifth Amendment claims could not survive summary judgment).  Therefore, Myers cannot maintain a Fifth Amendment claim against the Defendants.[2]

## 3.   **Fourth Amendment**

The Fourth Amendment prohibits "unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  Specifically, it protects persons, houses, papers, and effects from being unreasonably searched or seized, and requires probable cause

---

[2] If Myers is asserting a violation of his Fifth Amendment right against self-incrimination, such claim is not discernable from the allegations of the complaint.  Further, to the extent that he asserts an equal protection violation, such claim is properly analyzed under the Fourteenth Amendment.

15

before the issuance of a warrant.  <u>Texas v. Brown</u>, 460 U.S. 730, 735 (1983).  However, the Fourth Amendment does permit certain intrusions that are "less severe than full-scale searches or seizures without the necessity of a warrant."  <u>Id.</u> at 736.

Myers asserts that Defendants violated his rights under the Fourth Amendment by unreasonably (1) confining him to the Special Operations Center ("SOC"), (2) searching his vehicle to look for car seats, (3) searching and harassing him regarding his files, and (4) searching for him at his home and at his neighbor's home without his consent.  (Pl. Br., at 23.)  The Court finds that viewing the evidence in the light most favorable to Myers, Myers has not established that Defendants conducted any "search" or "seizure" under the Fourth Amendment.

"[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination of freedom of movement through means intentionally applied."  <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596-97 (1989).  The term "seizure" means either (1) "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," or (2) submission to the "assertion of authority."  <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991).  "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause."  <u>United States v. Robertson</u>, 305 F.3d 164, 167 (3d Cir. 2002).

16

Myers's assignment to the SOC, a "small room with no windows and an exposed ceiling", did not constitute a seizure.  (See Pl. Stmt. of Undisp. Facts, at 8-9.)  It was simply a job assignment, which Myers actually requested in the past.  (See id. at 9.) While working in the SOC, Myers was not restrained by either physical force or assertion of authority.  See Hodari D., 499 U.S. at 626.  In contrast, he was usually in the SOC alone and was permitted to leave for meal breaks.  (See Pl. Stmt. of Undisp. Facts, at 9.)  Further, Myers freely chose to continue working at the Prosecutor's Office despite the unfavorable conditions surrounding his current assignment.  Accordingly, Myers's freedom of movement was not restrained, and thus, the Court finds that he was not "seized" under the Fourth Amendment. See Brower, 489 U.S. at 596-97.

The Court also finds that Defendants did not conduct a Fourth Amendment "search" of Myers or his vehicle.  In Brown, the Supreme Court noted that an officer shining a flashlight into the interior of an automobile during a routine driver's license checkpoint "trenched upon no right secured . . . by the Fourth Amendment."  Id. 430 U.S. at 739-40.  The Supreme Court further noted that the officer bending down at an angle to view the interior of the automobile was irrelevant to any Fourth Amendment analysis.  Id. at 740.  The Supreme Court stated that (1) the officer, a government actor, should not be precluded from

observing what would be entirely visible to a private citizen, and (2) "[t]here is no legitimate expectation of privacy, shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police." Id. Thus, the court determined that the officer had not performed a Fourth Amendment search. Id. Applying the Brown reasoning, this Court concludes that Defendants did not perform a Fourth Amendment search when they photographed the interior of Myers's county-owned automobile to collect evidence that Myers failed to remove child car seats after he was directed to do so. (See Pl. Br., at 23; Pl. Stmt. of Undisp. Facts, at 11.) Moreover, with respect to Myers's vague allegations that Defendants unreasonably searched him for his files, and searched for him at his home and his neighbor's home, Myers has not established that Defendants attempted to enter or explore any area that would not be entirely accessible to any private citizen. See Brown, 460 U.S. at 740. Also, Myers provides no evidence or information to support or further explain these vague assertions in either his brief or Statement of Undisputed Facts. The Fourth Amendment does not prevent an employer from either demanding files from an employee that belong to the employer, or going to the employee's home or his neighbor's home to find such employee. Thus, summary judgment is appropriate on Myers's Fourth Amendment claims.

18

### 4.   Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause protects individuals against two types of government action.

> So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty". When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as procedural due process.

United States v. Solerno, 481 U.S. 739, 746 (1987) (internal cites omitted) (discussing Fifth Amendment's due process clause, which contains identical language). To prevail on a substantive due process claim, the plaintiff must demonstrate that he or she has a "fundamental" property interest or right under the United States Constitution. Hill v. Bor. of Kutztown, 455 F.3d 225, 235 (3d Cir. 2006). In analyzing a procedural due process claim, the Court must first determine whether the plaintiff was deprived of a liberty or property interest protected by due process. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); see Atkins v. Parker, 472 U.S. 115, 128 (1985).

Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise under the clause itself, a state

statute, or a regulation.  Muhammad v. Fauver, No. 79-3121, 1989
U.S. Dist. LEXIS 7324, at *43 (D.N.J. July 28, 1989).  The Court,
if concluding that the plaintiff was deprived of a liberty or
property interest, must determine what process is necessary.
Logan, 455 U.S. at 428; see Atkins, 472 U.S. at 128.  Procedural
due process is a flexible requirement and "calls for such
procedural protections as the particular situation demands."
Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (cite omitted).

Myers asserts a substantive due process claim arising "out
of the defendants' arbitrary abuse of government power which
interfered with his liberty and property interests."  (Pl. Br.,
at 15.)  Myers alleges that the due process clause prevents
Defendants from retaliating against him for exercising his rights
under the First Amendment, regardless of whether any property
rights are implicated.  (Id. at 16.)  However, as discussed in
more detail supra, Myers has not established that he engaged in
any conduct protected by the First Amendment.  See Discussion §
II.A.1.  Further, Myers has not alleged or shown conduct by the
Defendants that "shocks the conscience" of the Court or that
"interferes with rights implicit in the concept of ordered
liberty."  See Solerno, 481 U.S. at 746.

Myers also alleges that he has a viable Fourteenth Amendment
claim because he "sustained significant losses at the hands of
defendants."  (Pl. Br., at 17.)  Specifically, he contends that

20

(1) Thornberg took police powers away from him by sending a memo instructing other Prosecutor's Office employees not to call Myers for "Car Team call outs", (2) he was promoted to sergeant, but then demoted and "was penalized with stripes taken away", (3) Cullen accused him of stating that "Narcotics could run better" and suddenly he was transferred and had his stripes taken away, (4) Forrest "did not follow procedure . . . and initiated his own clandestine termination process of [Myers]", and (5) Defendants damaged Myers's standing and reputation in the community. (Id. at 17-18; Pl. Stmt. of Undisp. Facts, at 7, 13 (emphasis omitted).) However, "public employment is not a fundamental right entitled to substantive due process protections." Hill, 455 F.3d at 235. To the extent Myers alleges a procedural due process claim, he has not rebutted Defendants' prima facie showing that they did not interfere with any liberty or property interest. See Logan, 455 U.S. at 428. "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Hill, 455 F.3d at 234 (omission in original). Myers was an at-will employee, and thus, he did not have a legitimate entitlement to continued employment with the Prosecutor's Office. Id. Accordingly, Myers cannot assert a procedural due process claim based on his work-related demotions, transfers, reassignments, and loss of authority.

21

Reputation is also not an interest protected by the Due Process Clause.  Id. at 236.  However, damage to reputation or defamation does implicate a liberty interest if it is accompanied by deprivation of some additional right or interest.  Id. (describing "stigma-plus test", which applies when an employer disseminates a defamatory impression about an employee in connection with the employee's termination).  The additional right or interest may be job termination even if the employee did not have a protected property interest in such job.  Id. at 238. Myers has not established that Defendants disseminated false or defamatory information about him to the public.  Instead, he relies on vague allegations that Defendants accused him of wrongdoing "at council meetings", to his colleagues, at a court hearing, and at his termination.  (Pl. Br., at 18.)  Myers does not mention these instances in his Statement of Undisputed Facts and offers no evidence to support them.  In contrast, Myers states that Defendants did not give any reason for his discharge and "[o]nly now, when faced with a trial by jury, do [they] assert reasons for [the] termination."  (Pl. Br., at 13.) Therefore, after drawing all reasonable inferences in favor of Myers, the Court finds that Myers has not shown that Defendants disseminated a defamatory impression of him.  The Court will grant summary judgment on Myers's Fourteenth Amendment claims.

### 5.   Custom and Policy - Municipal Liability

Local government units may be sued directly under Section 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); see Natale v. Camden County Corr. Fac., 318 F.3d 575, 583-84 (3d Cir. 2003). However, as noted above, civil rights liability cannot be predicated solely on the doctrine of respondeat superior. Rode, 845 F.2d at 1207. Personal involvement in the alleged wrongdoing must be shown "through allegations of personal direction or of actual knowledge and acquiescence." Id. Accord Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under Section 1983, "a plaintiff must [first] show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). A policy is made when a decision maker with authority to establish municipal policy issues a final proclamation, policy, or edict. Kneipp, 95 F.3d at 1212. Moreover, a custom is a course of conduct by state officials that, although not officially authorized, is so permanent and well settled that it

23

essentially constitutes law. Id. There are three situations

where the Court should hold a governmental entity, which

established a policy or acquiesced in a custom, liable for the

acts of an individual government official:

> The first is where the appropriate officer or entity
> promulgates a generally applicable statement of policy
> and the subsequent act complained of is simply an
> implementation of that policy. The second occurs where
> no rule has been announced as policy but federal law
> has been violated by an act of the policymaker itself.
> Finally, a policy or custom may also exist where the
> policymaker has failed to act affirmatively at all,
> [though] the need to take some action to control the
> agents of the government is so obvious, and the
> inadequacy of existing practice so likely to result in
> the violation of constitutional rights, that the
> policymaker can reasonably be said to have been
> deliberately indifferent to the need.

Natale, 318 F.3d at 584 (internal quotes and cites omitted).

Nevertheless, a plaintiff alleging municipal liability under

Section 1983 must show more than the existence of an unlawful

policy or custom. Id. at 1213. The plaintiff also must

establish that the government policy or custom was the proximate

cause of the injuries sustained. Id.

Myers alleges that "defendants created, authorized,

maintained, permitted and enforced a policy, practice, custom or

usage of failing to properly instruct, supervise, control and

discipline members of the Department." (Pl. Br., at 19.) Myers

further alleges that the County, Forrest, Thornberg, Hissim, and

Cullen knew about the harassment and retaliatory conduct directed

at him but took no action to prevent it, and thus, they ratified

the harassment.  (Id.)  Nevertheless, the County and the defendants in supervisory positions acting on behalf of the County, have demonstrated that they are entitled to summary judgment on Myers's municipal liability claims.  Specifically, they have shown that their conduct did not violate Myers's constitutional rights, and, as discussed in more detail above, Myers has failed to rebut this showing.  Thus, there is no basis for imposing municipal liability here.  Bornstad v. Honey Brook Twp., 211 Fed.Appx. 118, 126 (3d Cir. 2007) (concluding that because the court found that there was no violation of plaintiff's constitutional rights, there was no basis for imposing municipal liability).[3]

**B.   Myers's State Claims**

The Court will not exercise supplemental jurisdiction over Myers's state claims in view of the impending judgment in the defendants' favor on the federal claims.  See 28 U.S.C. § 1367(c)(3) (authorizing same).  Thus, the Court will (1) deny without prejudice the part of the motion seeking summary judgment as to the state claims, and (2) dismiss the state claims without prejudice to reinstate in state court.  See 28 U.S.C. § 1367(d)

---

[3] Myers also alleges that Defendants conspired to deprive him of his rights under the First, Fourth, Fifth, and Fourteenth Amendments.  (Compl., at ¶¶ 105-107.)  Because the Court has already determined that Myers has not established that Defendants violated his rights under these Amendments, the Court will grant Defendants' motion for summary judgment with respect to Myers's conspiracy claim.

25

(tolling limitations period for state-law claim dismissed under Section 1367 while claim pending in federal court and for 30 days after dismissal).

## CONCLUSION

The Court will (1) grant the part of the motion seeking summary judgment as to the federal claims, (2) enter judgment in favor of the defendants and against the plaintiffs on the federal claims, and (3) dismiss the state claims without prejudice to reinstate in state court.  The Court will issue an appropriate order and judgment.


        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

26